DENNIS K. BURKE
United States Attorney
District of Arizona

KEVIN M. RAPP
Arizona State Bar No. 014249
Kevin.Rapp@usdoj.gov
CHARLES W. GALBRAITH
Arizona State Bar No. 025869
Charles.Galbraith@usdoj.gov
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
kevin.rapp@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>    v.<br><br>Mario Bernadel,<br><br>    Defendant. | CR 08-0256-PHX-SMM<br><br>**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM** |

The Plaintiff, United States of America, hereby files a supplemental sentencing memorandum for the court's consideration. This memorandum addresses issues that were raised at the January 26, 2010 sentencing hearing.

**I. Background**

On January 26, 2010 the parties convened for sentencing. At that hearing the court raised concerns over the application of several guideline provisions and directed the parties to provide supplemental briefing. Below the government has addressed those guideline provisions that are still unresolved. Accordingly, the government urges the application of the following guideline provisions: an 18 level increase for a loss amount of $4,919,074 pursuant to U.S.S.G. 2B1.1(b)(1)(J); a two point increase for obstruction of justice and a four level increase for an aggravated role.[1] Moreover, the government urges the court to consider a variance, as detailed below, for the collateral consequences that the defendant's activities had on the Scottsdale Lofts.

---

[1] The government submits that the following also apply: 2 level increase for sophisticated means (U.S.S.G. §2B1.1(b)(9); two level increase for a derivation of more than $1,000,000 from a financial institution (U.S.S.G. 2B1.1(b)(14)(A); and a four level increase for fifty or more victims (U.S.S.G. §2B1.1(b)(9).

**II. Loss Amount**

Based on the number of properties directly attributable to the defendant's activities the court should find a loss amount of $4,919,074. Attached as exhibit A is a summary of the losses attributable to defendant. First, the losses attributable to the counts where he was found guilty total $2,246,900. In addition to those properties that were referenced in the substantive counts, there were several other properties that were the subject of the conspiracy and testified to by cooperating witnesses. The total loss attributable those properties were $2,672,174. Accordingly, the total loss is $4,919,074 resulting in a 18 level increase pursuant to U.S.S.G. 2B1.1(b)(J). This figure was arrived at by taking the amount of the loan funded for the property during the charged conspiracy then that figure is subtracted from the amount the house sold for when it went into foreclosure.[2] Defendant's base offense level when considering only the loss amount is a twenty-five.

**III.   The Presentence Report Correctly Imposes a Four Level Enhancement for the Defendant's Role as Leader and Organizer Pursuant to Section 3B1.1(a).**

The Court has expressed some reservations in imposing more than two levels for his aggravated role in the criminal activity. (*See* RT p. 11.) The evidence at trial conclusively showed that defendant was a leader and organizer whose conduct fits squarely with the conduct of others who have been subject to a four level enhancement pursuant to U.S.S.G. §3B1.1(a). For example, in *United States v. Brodie*, 524 F.3d 259 (D.C. Cir. 2008), the Court of Appeals for the District of Columbia recently held that a four-level enhancement for being an organizer or leader was appropriate for a mortgage fraud defendant when defendant (1) recruited individuals with specialized skills to facilitate his scheme; (2) coordinated the group's efforts; and (3) paid the other participant's flat fees and kept the remainder of the loan proceeds for himself. *Id.* at 270, *cert. denied*, 129 S. Ct. 1396 (2009); *see also United States v. Greene*, No. 07-12315, 2008 WL 2222044 (11th Cir. May 30, 2008) (promoter who received the largest

---

[2] Exhibit B contains the Maricopa County Tax Reports for each of the subject properties. The reports provide the sales price in 2006, during the conspiracy, and what the property sold for in 2007 or thereafter.

percentage of money from the fraudulent mortgage transactions, recruited straw buyers and paid others to do the same, and was responsible for submitting false documents was properly assessed four level enhancement for being a leader and organizer).

Here, defendant answered to no one, and was accountable only to himself. Defendant recruited loan officers, mortgage brokers, appraisers, recruiters, an escrow officer and straw buyers to facilitate his scheme. Defendant coordinated his group's efforts; indeed, he often hand-delivered the mortgage documents to each of the various players, met with straw buyers at the escrow office for closings and created phony documents when necessary. Finally, defendant paid his recruiters, straw borrowers, and mortgage brokers flat fees, keeping the remainder of the "cash back" proceeds for himself.

There also can be no doubt that "the criminal activity ... involved five or more participants" pursuant to U.S.S.G. §3B1.1(a). The Court could make this finding on the basis of the more than five straw buyers used by defendant alone.[3] ("[T]he district court properly found that the conspiracy involved five or more individuals because the fraudulent mortgage transactions . . . used seven different straw buyers"). *Id*. Apart from the straw buyers, however, this Court itself has convicted Lucero (loan officer), Adorno (loan officer), Marcus Branch (loan officer), Brittany Parish (loan officer), Bartlemus (escrow officer), Webber and McWilliams (straw buyer and/or recruiter) for their roles in this conspiracy.[4] Indeed, there is a strong argument that an upward departure pursuant to U.S.S.G. §5K2.0(a)(3) is warranted because defendant was a leader and organizer of a criminal activity with substantially more participants

---

[3] Exhibit A details the properties where defendant used a straw buyer, received money from the transactions and the property went into foreclosure. Exhibit D is an analysis of the bank records for Compass Development LLC. The records clearly show deposits and withdrawals associated with the following known straw buyers: Bianca Francour, Howard Davis Joyce Johnson, Julie Thompson, Kristen Ketterson, Kristen Moody, Mike Thompson, Tahki Banister, and Yasmin Ibrahim. Additionally, Ducamond Chataigne and Christine Shiplett were also straw buyers specifically associated with transactions involving defendant.

[4] Again, Sean McClaughlin (loan officer) and Dustin Thompson (recruiter) have pleaded guilty in CR-CR-09-00386-PHX-ROS. Both have identified Bernadel as a coconspirator and the person who mentored them on cash back transactions.

than is generally recognized by U.S.S.G. §3B1.1, which stops counting after criminal activities with merely "five participants."

### IV. Analysis of Bank Records

During the investigation, agents attempted to obtain bank records for Compass Development, to determine what monies, if any, the defendant was receiving from transactions involving straw buyers. The investigating agent was advised by JP Morgan Chase subpoenaing processing that the records related to Compass Development could not be located. On January 26, 2010, *after* the defendant was convicted, the government received bank record for Compass Development. (*See* Exhibit C.)

The bank records have been disclosed to the defense and analyzed by the investigating agent. Attached as exhibit D is analysis of the records that demonstrates payments received from Title companies for properties involved in the scheme during 2005-2007. During that time frame $2,086,744.25 was deposited into the Compass Development bank account from wires or checks.[5] $1,795,051.61 is traceable to the conspiracy, as the notes on the checks or deposits reference particular loan numbers or properties implicated in the scheme.

Additionally, $303,212.96 were either checks or deposits to individual straw buyers who either testified at trial or were implicated in cooperators' testimony. (*See* Exhibit D p.2.*)* For example, witnesses identified Bianca Francour, Howard Davis, Kristen Moody, Tahki Banister and Joyce Johnson as straw buyers implicated in the charged scheme.[6] Although Mike and Julie Thompson were not mentioned during testimony they have been identified as straw buyers in the investigation of Sean McLaughlin and Dustin Thompson. Furthermore, the notation BHFC stands for Big Houses and Fast Cars and was the LCC controlled by Dustin Thompson; there

---

[5] The $2,086, 744.25 does not include cash deposits as the government is unable to trace the cash to any particular transaction.

[6] Joyce Johnson actually testified to her role as a straw buyer and interaction with defendant.

4

was $45,813.07 deposited and $21,868.00 withdrawn in Bernadel's bank account related to Thompson's LLC.

In addition to monies for particular properties, Defendant's bank records demonstrates that $81,600.00 was paid for payments on luxury vehicles. $71,300 was transferred to Bernadel Companies such as Loft Partners that he used for transactions involving the Scottsdale Lofts. In the final analysis, the defendant's bank records corroborate much of the testimony of the witnesses who testified against Bernadel at trial. They further demonstrate the substantial money Bernadel made during the course of his fraudulent scheme.

**V. Collateral losses**

The court was reluctant to impose an upward departure or variance for collateral losses as most of the foreclosed properties involved in the scheme were spread out across Maricopa County, thus, complicating a determination that the resulting foreclosures had collateral consequences to nearby properties. (*See* RT p. 10.) This would not, however, be the case for the Scottsdale Lofts. Bernadel or his associates purchased and sold eight properties at the Scottsdale Lofts. In each case they went into foreclosure. (*See* Exhibit E.) In addition to the properties involving Bernadel, 36 other units went into foreclosure. The average loss in value to the properties from when they were sold during the scheme and to what they were worth when they were sold in foreclosure was 65%. It is clear that Bernadel artificially increased the value of his Scottsdale Loft units and sold the units to unqualified straw buyers. This resulted not only in a devaluation of his properties but impacted others within the Loft complex.

**VI.   Obstruction of Justice**

The defendant's offense level calculation should be enhanced two levels for obstruction pursuant to U.S.S.G §3C1.1. Defendant has repeatedly filed *pro-per* motions, and did so after the Court ordered, "that these documents shall not be filed as a part of this criminal proceeding." (Doc. #423). The most commonly filed of these such documents has been titled, "Notice and Demand for Identification and Credentials Quo Warranto," ("Notice and Demand") in which defendant demands various documents related to the employment and office of certain public employees involved in this case. (Docs #294, 328, 409, 429, 434). The Notice and Demands,

5

then asserts that the listed public employees are acting without authority and accordingly any prosecutions they are involved with are nullified.

These filings by the defendant stated that they were, "not intended to hinder, delay, obstruct, intimidate, or in any way threaten." However, in the very next sentence then threatens these public officials with "prosecution by proper authorities, for mail fraud and/or wire fraud," for failing to comply with defendant's demands. Additionally, defendant would attach a photocopy of a treatise to the Notice and Demands, with a underlined section that read, "Quo warranto is generally regarded as an appropriate and adequate remedy to oust an incumbent who has unlawfully usurped or intruded into such office or is unlawfully holding such office." The apparent attempt being to threaten the employment of numerous people directly involve in this case. Furthermore, the Court stated in a December 4, 2009 Order, the *pro-per* filings by defendant were "specious and unlawful," and intended to "harass and disrupt lives of public employees, not to set forth a legitimate claim by Mr. Bernadel." (Doc. #423).

Among the individuals whom defendant listed in these Notice and Demands were the presiding Judge, Clerks of the Court, the prosecutors, elected officials and others including two government witnesses; IRS Special Agent William Park and Thomas Giallanza of the Arizona Department of Financial Investigations. The non-exhaustive list of covered conduct to warrant a two level guideline enhancement for obstruction includes, "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G. §3C1.1, Application Note 4(a) (emphasis added). *See Unites States v. Rising Sun*, 522 F.3d 989, 996 (9th Cir. 2008) ("Application notes...are treated as authoritative interpretations of the Sentencing Guidelines, unless they violate the Constitution or a federal statute or are inconsistent with, or a plainly erroneous reading of the Guideline they are meant to interpret.")

The Ninth Circuit has recently held that actions filed without a legitimate purpose may qualify as unlawful harassment and constitute an attempt to intimidate or unlawfully influence a witness. *United States v. Kilbride*, 584 F.3d 1240, 1261 (9th Cir. 2009). In *Kilbride*, the defendant filed suit against a government witness in the witness' home country of Mauritius.

6

*Id.* at 1246. The Court found this filing to be an intentional tactic to prevent a government witness from testifying at trial. *Id.* Here, although the improper filings by the defendant were made after the two government witnesses had testified, they were filed before the Court had denied defendant's motion for a new trial. As defendant was seeking a new trial he was simultaneously seeking improper action with regards to two government witness, who would likely be called upon to testify again had a new trial been granted. Accordingly, the defendant's guideline range calculation should be enhanced by two levels pursuant to U.S.S.G. §3C1.1.

Furthermore, if the Court deems the defendant's actions fall outside of the conduct necessary to trigger an obstruction enhancement under U.S.S.G. §3C1.1, the continual and frivolous filings by defendant, in direct violation of a Court order, warrant an upward departure from the guideline range at the Court's discretion.

**VII. Guideline Calculation**

Based upon the court's preliminary rulings and the applicable offense characteristics, the government proposes the following guideline calculation:

| | | |
|---|---|---|
| Base offense level: | 25 | U.S.S.G. §2B1.1(b)(1)(J) |
| Specific offense Characteristic: | +1 | U.S.S.G. §2S1.1(b)(2)(A)(money laundering 1957) |
| Adjustment for Role in the offense: | +4 | U.S.S.G. §3B1.1(a)(leadership) |
| Specific offense Characteristic: | +2 | U.S.S.G. §2B1.1(b)(9)(sophisticated scheme) |
| Specific offense Characteristic: | +2 | U.S.S.G 2B1.1(b)(14)(A)($1,000,000 in gross receipts from financial institutions) |
| Obstruction of Justice: | +2 | U.S.S.G. §3C1.1(Obstruction of Justice) |
| Specific offense Characteristic: | +4 | U.S.S.G. §2B1.1(b)(9)(50 or more victims) |
| Total offense level: | 40 | |

7

**VIII. Conclusion**

The applicable guideline range, based on the above calculation, in a criminal history category II, is a sentence of 324-405 months imprisonment. Again, there are certain cases where the guideline substantially overstates the seriousness of the offense a downward departure may apply. (*See* §2B1.1 Application Notes: (19).) The government urges that the court impose a sentence of 240 months imprisonment.

Respectfully submitted this 12th day of February, 2010.

DENNIS K. BURKE
United States Attorney
District of Arizona

s/Kevin M.Rapp
Kevin M. Rapp
Charles Galbraith
Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2010 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant: Michael Smith, Attorney for Mario Bernadel.