**MICHAEL J. SMITH**
State Bar# 011105
Attorney at Law
2340 W. Ray Road
Suite 1
Chandler, Arizona 85224
(480) 491-9750
Attorney for Defendant
gonzalezandsmith@aol.com

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 2008-256-001-PHX-SMM |
| Plaintiff, | ) | |
| | ) | **SUPPLEMENTAL SENTENCING** |
| | ) | **MEMORANDUMS/OBJECTIONS** |
| v. | ) | |
| | ) | |
| MARIO BERNADEL, | ) | |
| | ) | |
| Defendant. | ) | |

The defendant, Mario Bernadel, through counsel undersigned, provides the following information for the court's consideration:

**1**. Loss Calculations: The defendant disagrees with the Loss information contained in the Government's Supplemental Memorandum. The government uses the original sales price minus the final sales price for its loss calculations on the properties involved. It provides sheets of information from a private research source, not the actual records from the County Recorder's Office. However, most of the information contained in the sheets is accurate as far as the defense can ascertain. However, this still does not support the Government's loss calculations.

In the Government's Exhibit A of their supplemental memorandum, they provide a spread sheet of what they argue is the loss attributable to Mr. Bernadel. A review of the County records available on the County Website shows that only five (5) of the properties

relating to guilty verdicts were sold at trustee sales. Defense has attached as exhibit 2, Trustee Deeds Upon Sale for the properties associated with the guilty verdicts.

As the court may be aware, the government does not have the actual loan documents and mortgage liens recorded with regard to each property. It is Counsel's understanding that the various lending institutions have not cooperated in providing the actual loan documents, which is why the Government relied on the title company records to prosecute their case. There has not been a showing of the actual amount loaned and what payments were made on the mortgages. The information sheets attached to the Governments Supplemental Memorandum show the mortgage amount associated with each purchased home. To argue that the information in the sheets is accurate for the portions they desire (sales price) and inaccurate for the portions they do not like (mortgage amount) would be disingenuous.

Therefore, the defense has used as the basis for potential loss the amount of the mortgage reflected on the Government's information sheets. Also, the information sheets show when a trustee sale was held and the dollar amount the property sold for at public auction. The trustee sale documents associated with the houses listed in Government Exhibit A and related to guilty verdicts is attached in exhibit 2. Attached as exhibit 1 is a spread sheet prepared by the defense for the eight (8) residences relating to the guilty verdicts. The spread sheet shows the mortgage amount, the amount each house was sold for at a trustee sale and the associated loss (or gain). Three (3) of the residences were not sold through trustee sale or foreclosure but have warranty deeds from the alleged co-conspirators to the current owners. Therefore, the lenders either agreed to a short sale, had the co-conspirators maintain the debt but released the collateral or the properties were sold for the outstanding loan amount. Since we do not know which is the case, it would be unreasonable to assume there was a loss if the victim (lending institute) has not provide proof of any loss and the residences where sold without apparent encumbrances from the lending institutes nor foreclosed upon. The final Warrant Deeds for these properties are attached as exhibit 3.

With regard to the "properties testified about at trial" as set forth in the Government's supplemental memorandum, the majority of these again were sold at Trustee Sale as reflected in the government's information sheets. To touch on just two as an example, the 3rd Ave. Loft #405 had a mortgage of $1,175,000 but sold at Trustee Sale for $998,968 and the Whistling Straight property had a mortgage of $875,000 but sold at Trustee sale for $782,495. The Government wanted to associate over $1M loss for just these two properties. Regardless, the defense does not believe any of the secondary properties should be included in the loss calculations. If the Government had wanted their alleged losses included, they should have requested a special verdict form.

2. Bank Records. It is assumed that the Government is attempting to show that Mr. Bernadel received in excess of $1,000,000.00 in gross receipts for purposes of a 2 level increase pursuant to §2B1.1 (b)(14)(A). A review of the larger deposits the Government asserts are associated with the convictions in this matter does not support this position. Attached as exhibit 4 is copies of the larger checks deposited in the Compass Development account and alleged to be associated with this case. A review of the escrow file numbers (none of the checks have the physical address of the properties associated with the transaction) do not correlate to the escrow files and properties alleged to be involved in this matter. If the government desires to have an enhancement, at a minimum, they must set forth which properties the amounts reflect. Without this information, the court cannot reasonably assume that every transaction was illegal and part of the scheme for which Mr. Bernadel was convicted.

3. Obstruction of Justice. Mr. Bernadel has, through his various filings, asserted views on the legality of his prosecution contrary to what is believed by defense counsel to be the present law. To clarify an issue which may be raised at some point, Counsel does not believe Mr. Bernadel is not competent to assist counsel with his defense and understands the nature of the charges. Mr. Bernadel may have different views and opinions on what the law is, and how it applies to him; however, he is intelligent and articulate in his dealings with Counsel. Mr. Bernadel, from his pleadings, makes it clear he disagrees with Counsel's views on several

issues. That being said, the pleadings filed by Mr. Bernadel do not amount to obstruction of justice. The pleadings filed cannot be construed as an attempt to threaten, intimidate or otherwise unlawfully influence a witness, party or the court. Candidly, when Counsel reviews the filings, the concepts asserted are lost on Counsel. The filings may be annoying, however, they are not threatening or intimidating.

4. Leader and Organizer. As set forth in the defendant's original objections, the testimony at trial was that Mr. Bernadel refused to advise Adorno and Lucero how he was buying property and getting money back. The evidence at trial was that Bartlemus (without Mr. Bernadel's knowledge) advised, instructed and aided Lucero and Adorno in their actions. The evidence at trial was that Bartlemus changed documents, destroyed documents and obtained new earnest money checks on his own accord, not at the direction of Mr. Bernadel. The evidence at trial was that Mr. Bernadel operated alone in his actions.

Mr. Bernadel has been found criminally liable for the actions of the co-defendants on some counts, however, there is no evidence that he was an organizer, leader, manager or supervisor of any of the co-defendants or "participants". "This adjustment does not apply to a defendant who merely suggests committing the offense" U.S.S.G. §3B1.1 n. 4.

5. Collateral losses adjustment is not warranted given the national meltdown of the real estate market. The government points to the 3rd Ave Lofts as demonstrating collateral loss. A brief review of any real estate news will show that almost all condominium complexes took tremendous losses in value. Many conversion projects of apartment complexes to condos halted. The facts do not support the assertion that the loss in value of the condos was the result of alleged criminal activity as compared to the general change in the housing market.

6. Overstated seriousness of the offense. A downward departure is warranted due to the guidelines substantially overstating the seriousness of the offense. §2B1.1 Application note 19(C). The guidelines for the offenses for which Mr. Bernadel was convicted are financially

driven. The amount of loss is the primary enhancing factor in his sentencing guidelines, however, the loss calculations are in large part the result of the victims actions in this case. The defense is not trying to blame the lending institutes for the convictions that have been entered, however, consideration must be given to whether the victims helped to artificially inflate the real estate market through their "no doc" "stated income" "liar loans" "low down" "no down" packages they placed onto the market. The court should consider that in our lifetime (post depression) there has not been a collapse of the housing market as we see today. This tremendous change in value could not reasonably be contemplated when applying the sentencing guidelines for loss calculations. The guidelines were promulgated with the concept that a potential loss can be offset in cases such as these by the sale of the involved properties. §2B1.1 Application note 3(E)(ii). Normally this would involve the loss of a nominal amount as a healthy real estate market absorbs foreclosures. The circumstances of this case amount to "the perfect storm" it was unforeseen that the entire real estate market in the United States would collapse.

It is important to note that it is **not** alleged that the appraisals supporting the loans made in this case were fraudulent. The amounts the properties sold for, and loans were funded for, was the actual value of the properties at the time of sales. Therefore, this court should temper the guidelines calculations with the reality that the loss amounts claimed are high due to an unprecedented failure of the housing market and that the guidelines do not contemplate such a complete failure and therefore over state the seriousness of the offense.

RESPECTFULLY SUBMITTED this  5th  day of March, 2010

                By:

                Michael J. Smith
                Attorney at Law

I hereby certify that on March 5, 2010, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal to the following ECF registrants:

CLERK OF THE COURT
DISTRICT COURT
Sandra Day O'Connor US Court House
Suite 130
401 W. Washington- SPC 1
Phoenix, AZ 85003-2118

KEVIN RAPP
Two Renaissance Square
40 N. Central
Suite 1200
Phoenix, AZ 85004-4408

Suzanne Squires
U.S. Probation Officer
Sandra Day O'Connor U.S. Courthouse, Suite 160
401 W. Washington Street – SPC 7
85003-2118


By: Angelica Martinez
    ANGELICA MARTINEZ